IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **STEPHANIE M PAYNE,** | * | |
| Plaintiff, | * | |
| | | Civil Action No. RDB-21-2841 |
| v. | * | |
| **MEDSTAR HEALTH, INC.** *et al*, | * | |
| Defendants. | | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

*Pro se* Plaintiff Stephanie Payne ("Plaintiff" or "Payne") brings this fourteen-count employment action against Defendants MedStar Health Inc., HH Medstar Health, Inc, MedStar Medical Group, LLC, Harbor Hospital, Inc., Montgomery General Hospital, Inc., The Union Memorial Hospital, The Good Samaritan Hospital of Maryland, Inc., Franklin Square Hospital Center, Inc., MedStar Ambulatory Services, Inc., MedStar Surgery Center at Lafayette Centre, LLC, Bay Life Services Corporation, MedStar Physician Partners, Inc., (collectively "Defendants"), for alleged violations of the Maryland Fair Employment Practices Act (Counts I, V, and IX), the Americans with Disabilities Act (Counts II, VI, and X), Section 504 of the Rehabilitation Act (Counts III, VII, XI), the Howard County Code § 20-1202 (Counts IV, VIII, XII), the Family and Medical Leave Act (Count XIII), and the Maryland Wage Payment and Collection Law (Count XIV). (ECF No. 2.)

The Defendants have filed an Answer (ECF No. 19) and a partial Motion to Dismiss (ECF No. 20). Defendants' Answer responds to allegations in Counts II, III, IV, VI, VII, VIII, XI, XII, XIII, and XIV, and references their accompanying partial Motion to Dismiss as to Counts I, V, IX, and X. (ECF No. 19.) The Motion to Dismiss (ECF No. 20) seeks to dismiss

Counts I, V, IX, and X as to all Defendants, and to dismiss Counts X, XI, XII, XIII, and XIV as to all Defendants except Defendant MedStar Harbor Hospital. This Court has considered Defendants' Motion and Plaintiff's Opposition (ECF No. 25), and finds no hearing is necessary. Loc. R. 105.6 (D. Md. 2021). For the reasons that follow, Defendants' Motion (ECF No. 20) shall be **GRANTED IN PART and DENIED IN PART**. Specifically, Counts IX, X, XI, XII, XIII, and XIV shall be DISMISSED as to all Defendants except Defendant MedStar Health Inc. and Defendant MedStar Harbor Hospital, Inc.

As a result, the following claims from Plaintiff's Complaint remain as to all Defendants: Count I, Count II, Count III, Count IV, Count V, Count VI, Count VII, and Count VIII. The following claims from Plaintiff's Complaint remain as to Defendant MedStar Health Inc. and Defendant MedStar Harbor Hospital, Inc. ONLY: Count IX, Count X, Count XI, Count XII, Count XIII, Count XIV.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). Because Payne is proceeding *pro se*, her submissions are liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Plaintiff was employed by MedStar Health, Inc. as a registered nurse from July 2007 until October 1, 2019. (ECF No. 2 at 7.) She worked at MedStar Harbor Hospital, and "on a PRN basis" at MedStar Montgomery Medical Center and MedStar Surgery Center at Lafayette Centre. *Id.* at n.1. Plaintiff began experiencing severe pain in her left shoulder in early to mid-February 2019 which limited her

range of motion in her left arm. *Id.* at 7. Payne's MRI results led to a diagnosis of impingement syndrome of the left shoulder. *Id.* at 8. Plaintiff was later additionally diagnosed with ulnar neuropathy at her left elbow and cervical radiculopathy. *Id.* Plaintiff had previously experienced similar pain in June 2018 from a workplace injury. *Id.* at n.2.

Payne required multiple medical and rehabilitative treatments for her disability, including visits to doctors, physical therapy, medications, and corticosteroid injections. (ECF No. 2 at 8.) Each of Plaintiff's treatments were documented by doctors' notes from February, March, April, June, and July of 2019 which she promptly gave her employer. *Id.* Doctors' notes from June and July 2019 indicated that Plaintiff could work with modified duties lasting until January 1, 2020. *Id.* In addition to work limitations, Plaintiff's injury limited her personal and daily activities, including sleeping. *Id.*

Prior to the doctors' notes limiting Payne's work duties, Plaintiff informed Dr. Paula R. Dennis, an employee in the Occupational Health Department at MedStar Health, Inc., in February 2019 of her disability and its potential linkage to her previous workplace injury, as well as the need for a restricted duty accommodation. (ECF No. 2 at 9.) As a result, Jaime Krasauskis, MedStar Patient Care Manager, authorized Plaintiff's restricted duty work accommodation that same day. *Id.* Days after Payne's accommodation request was approved, Kathleen Wooden, an Occupational Health Registered Nurse Case Manager, told Plaintiff over the phone that she was surprised Plaintiff's accommodation had been authorized because she did not believe Plaintiff's disability was work-related. *Id.* Plaintiff further alleges that within the same timeframe, a Unit Manager repeatedly encouraged Payne to resign from her position. *Id.* at 10.

3

On March 12, 2019, Ms. Wooden copied Ms. Krasauskis on an email to Payne stating that MedStar was unable to accommodate Payne's modified duties from the March 15, 2019–April 30, 2019, period. (ECF No. 2 at 10.) During this timeframe, Plaintiff applied and interviewed for a nursing position with a MedStar facility "within her physical limitations", but she was not offered the position. *Id.* Thereafter, around May 1, 2019, MedStar Health's Office of Leave Management permitted Payne to work a reduced schedule of twenty hours per week as a reasonable accommodation under the Americans with Disabilities Act from April 30, 2019, to June 30, 2019. *Id.*

Payne subsequently received a letter requesting information about her June 2018 workplace injury dated May 2, 2019, from James Rodgers, a claims adjuster that handles MedStar's workers' compensation claims. (ECF No. 2 at 11.) On May 20, 2019, Payne spoke with Mr. Rodgers on the phone concerning his letter. *Id.* The same day, Ms. Wooden again told Plaintiff that she did not view Payne's injury as work related and that Mr. Rodgers' communications with Plaintiff were an error. *Id.* The following day, Payne began a restricted work assignment that lasted until June 30, 2019. *Id.* The number of working hours varied each week, but always exceeded twenty hours a week. *Id.*

During Payne's restricted work assignment and thereafter, she applied for approximately thirteen positions within MedStar Health that could accommodate her physical limitations, including:

- Pain Management Registered Nurse with MedStar Medical Group, LLC;
- Acute Pain Service Registered Nurse with MedStar Medical Group, LLC;
- Utilization Review Registered Nurse with MedStar Harbor Hospital;

4

- Ortho & Sports Medicine Scheduler with Bay Life Services;

- Patient Registrar with MedStar Harbor Hospital;

- Patient Companion with MedStar Union Memorial Hospital;

- Patient Services Coordinator with MedStar Physician Partners, Inc.;

- Stroke Coordinator Registered Nurse with MedStar Harbor Hospital;

- Medical Assistant with MedStar Baltimore Region;[1]

- Patient Care Coordinator Registered Nurse with MedStar Union Memorial Hospital;

- Clinical Value Analysis Specialist with HH MedStar Health, Inc.;

- Breast Health Care Coordinator Registered Nurse with MedStar Ambulatory Services.

(ECF No. 2 at 12-14.) Payne also made numerous emails and phone calls to find an appropriate job opportunity. *Id.* Plaintiff had interviews for the Stroke Coordinator Registered Nurse and Patient Care Coordinator Registered Nurse positions, but neither those nor the other above-listed positions were offered to Payne. *Id.* at 14.

Payne states that she never received any assistance to procure a light duty position from MedStar Health personnel. *Id.* at 15. She alleges that Kathy Miles, the Director of MedStar Health's Office of Leave Management, offered to check the status of Payne's job applications, but Ms. Miles never followed through with that offer despite Plaintiff's numerous attempts to contact her. *Id.* Payne also alleges that she spoke with a Nurse Recruiter who was similarly of no help. *Id.* Additionally, Plaintiff requested a meeting with a MedStar Health business partner

---

[1] Plaintiff's Complaint alleges that the Baltimore Region includes MedStar Franklin Square Medical Center, MedStar Good Samaritan Hospital, MedStar Harbor Hospital, and MedStar Union Memorial Hospital. (ECF No. 2 at 13 n.10.)

and human resources director, but that meeting never took place. *Id.* at 16. Finally, around September 12, 2019, Plaintiff emailed Ms. Krasauskis inquiring about available job positions; Ms. Krasauskis did not reply to Plaintiff's email. (ECF No. 2 at 16.)

Plaintiff ultimately received a letter dated September 19, 2019, from MedStar Harbor Hospital terminating her employment effective October 1, 2019. *Id.* at 19. That letter stated Plaintiff was fired because she was unable to return to work at that time, and because she had no expected return to work date. *Id.* Upon her termination, Plaintiff was not paid out for her unused, accrued leave totaling 128.36 hours. *Id.* at 20.

Payne filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 12, 2020, which was cross-filed with the Howard County Office of Human Rights and Equity (OHRE).[2] Payne's Charge of Discrimination alleges discrimination based on disability and explains that she was discharged from her position because she did not return from medical leave. (ECF No. 23.) In April 2020, the EEOC transferred the case to the OHRE for investigation. (ECF No. 2 at 21.) The EEOC issued Plaintiff a "right to sue" letter, which indicated that the EEOC had closed its investigation after the OHRE found no reasonable cause to believe Plaintiff was discriminated against, on June 30, 2021, and Payne filed a civil complaint in the Circuit Court for Howard County in the State of Maryland on September 20, 2021. (ECF No. 1.) Defendants were served with a copy of the Complaint and summons on October 7, 2021, and removed the case to this Court on November 4, 2021, based on federal question jurisdiction and supplemental jurisdiction over Plaintiff's state law claims. (ECF No. 1.) Payne has been unable to secure long-term

---

[2] Previously known as the Howard County Office of Human Rights.

employment since her termination from MedStar in October 2019, and she suffers from economic and non-economic damages as a result. (ECF No. 2 at 20.)

The Defendants filed an Answer (ECF No. 19) and subsequently filed a partial Motion to Dismiss (ECF No. 20) on the same day. Defendants' partial Motion to Dismiss (ECF No. 20) seeks to dismiss many of the Counts as to all Defendants, and to dismiss some of the Counts with respect to Defendants other than MedStar Harbor Hospital. Specifically, Defendants argue that Plaintiff's Maryland Fair Employment Practices Act ("MFEPA") claims (Counts I, V, and IX) fail as to all Defendants because MFEPA does not provide for a private cause of action. (ECF No. 20-1 at 2.) Defendants also argue that Plaintiff's Americans with Disabilities Act ("ADA") retaliation claim (Count X) should be dismissed as to all Defendants for Plaintiff's failure to exhaust administrative remedies. *Id.* Finally, Defendants contend that Plaintiff's various state and federal retaliation claims (Counts X, XI, XII, and XIII) and her unpaid wages claim (Count XIV) should be dismissed as to all Defendants except Plaintiff's employer Defendant MedStar Harbor Hospital because the remaining Defendants were uninvolved in Plaintiff's medical leave, her termination, or the failure to pay wages. *Id.*

Payne generally opposes Defendants' Motion, stating that MFEPA creates a private cause of action, that her Charge of Discrimination gave the Defendants sufficient notice of her ADA retaliation claim, and that the named Defendants all act as an integrated enterprise. (ECF No. 25.)

**STANDARD OF REVIEW**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil

Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

While ruling on motion to dismiss, a court's evaluation is generally limited to allegations contained in the complaint. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166-67 (4th Cir. 2016). However, courts may also consider documents explicitly incorporated into the complaint by reference. *Id.* at 166 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L. Ed. 2d 179 (2007)). In addition, a court may "consider a

document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* (citing *Sec'y of State for Defence v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F.Supp.2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis omitted). Considering such documents does not convert a motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

## ANALYSIS

I.  **Maryland Fair Employment Practices Act Claims as to All Defendants (Counts I, V, IX)**

Defendants argue that Payne's MFEPA claims must be dismissed as to all Defendants because MFEPA does not create a private cause of action. (ECF No. 20-1 at 7.) Defendants' argument relies on outdated law. Under MFEPA, an employer may not discharge or otherwise discriminate against an employee because of the employee's disability. Md. Code Ann., State Gov't § 20-606. Additionally, the employer may not "fail or refuse to make a reasonable accommodation for the known disability of an otherwise qualified employee or an applicant for employment." *Id.* In 2007, the Maryland General Assembly amended MFEPA to provide a private cause of action for employment discrimination. *See* S.B. 678/H.B. 314, 2007 Md. Laws, Chs. 176 & 177, *codified as amended at* Md. Code Ann., State Gov't §§ 20-601, *et seq.* A plaintiff may bring a civil MFEPA action where (1) "the complainant initially filed a timely

9

administrative charge or a complaint under federal, State, or local law alleging an unlawful employment practice by the respondent"; (2) 180 days have passed since the filing of that charge or complaint; and (3) the civil action is filed within two years after the alleged discrimination occurred. § 20-1013.

The Defendants have cited *Childers v. Chesapeake and Potomac Tel. Co.*, 881 F.2d 1259, 1265-66 (4th Cir. 1989), to support the proposition that MFEPA does not create a private right of action. (ECF No. 20-1 at 7.) In *Childers*, the United States Court of Appeals for the Fourth Circuit references Md. Code Ann. Art. 49B, § 16, and states that Maryland law does not "create a private right of action in tort" for employment discrimination. 881 F.2d at 1265-66. That Maryland law has since been repealed and replaced by MFEPA, which, as explained above, *does* create a private right of action for employees alleging discrimination by their employers. *See* § 20-1013, Revisor's Note (Acts 2009, c. 120) (noting the additions and substitutions from former Art. 49B).

Furthermore, this Court has routinely analyzed MFEPA discrimination claims under the same framework as claims brought under various federal statutes. *See Buckmaster v. Nat'l R.R. Passenger Corp.*, No. CV RDB-19-3203, 2022 WL 1081947, at *6 (D. Md. Apr. 11, 2022) (MFEPA analogized to ADA); *Lowman v. Maryland Aviation Admin.*, No. CV JKB-18-1146, 2019 WL 133267, at *4 (D. Md. Jan. 8, 2019) (MFEPA analogized to Title VII); *Churchill v. Prince George's Cnty. Pub. Sch.*, No. PWG-17-980, 2017 WL 5970718, at *5 (D. Md. Dec. 1, 2017) (same). To assert that MFEPA does not create a private cause of action amidst a sea of case law interpreting private causes of action under MFEPA is misguided. Consequently, the part

of Defendants' Motion to Dismiss (ECF No. 20) that seeks dismissal of Plaintiff's MFEPA claims (Counts I, V, IX) on this basis is DENIED.

## II. Americans with Disabilities Act Retaliation Claim as to All Defendants (Count X)

Defendants argue that Plaintiff failed to administratively exhaust her ADA retaliation claim because her Charge of Discrimination only listed discrimination based on disability. (ECF No. 20-1 at 7.) The ADA requires that a plaintiff must first exhaust her administrative remedies before filing suit in federal court. *Sydnor v. Fairfax Cnty., Va.*, 681 F.3d 591, 593 (4th Cir. 2012) (citing 42 U.S.C. § 2000e–5(b)). A plaintiff exhausts her administrative remedies when she files a charge with the EEOC. *Id.* An EEOC charge effectively puts the employer on notice of alleged violations and allows it to "address the alleged discrimination prior to litigation." *Id.* "The goals of providing notice and an opportunity for an agency response would be undermined, however, if a plaintiff could raise claims in litigation that did not appear in h[er] EEOC charge." *Id.*

"At the same time, however, the exhaustion requirement should not become a tripwire for hapless plaintiffs." *Sydnor*, 681 F.3d at 594. Thus, where a "a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in her subsequent civil suit." *Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000) (citing *Chisholm v. United States Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981)). In other words, "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be

maintained in a subsequent Title VII [or ADA] lawsuit." *Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022) (quoting *Stewart v. Iancu*, 912 F.3d 693, 705 (4th Cir. 2019)) (internal quotations and citations omitted).

Plaintiff's Charge of Discrimination marks that discrimination was based on disability, but it does not mark the box next to retaliation. (ECF No. 23.) In explaining the particulars of her charge, Payne wrote, in part, that MedStar's "reason for [her] discharge was because [she] did not return from medical leave." *Id.* Defendants argue that the EEOC, Howard County Office of Human Rights and Equity, and MedStar Harbor Hospital were not put on notice that Payne alleged retaliatory conduct because she did not mark the retaliation box on her Charge of Discrimination, and she did not "advance a single allegation" in her Charge. (ECF No. 20-1 at 9.) Payne contends that the investigative report drafted by the OHRE described Plaintiff's claim in part as asserting she was discharged because she took medical leave. (ECF No. 25-1 at 2.) In other words, Payne argues that Defendants were sufficiently on notice of her claims as evidenced by the OHRE's description and investigation of alleged retaliation.

Plaintiff's ADA claim of retaliation is reasonably related to her Charge of Discrimination and was also "developed by reasonable investigation of the original" Charge. *Walton*, 33 F.4th at 172. Although Payne did not check the retaliation box on her Charge, her explanation of the particulars of the charge indicate that she alleged the reason for discharge was because of her medical leave. (ECF No. 23.) Such allegation of retaliation was further emphasized in the OHRE's written findings which characterized Plaintiff's claim as alternatively asserting that MedStar Harbor Hospital "discharged her because she took medical leave and did not return." (ECF No. 25-2 at 8.) Put simply, Payne's Charge of Discrimination

included the facts particular to her claim of retaliation, and the investigation done by the OHRE summarized that Plaintiff's claim is that she was discharged because she took medical leave; therefore, MedStar Harbor Hospital was put on notice that Plaintiff alleged she was retaliated against because of her medical leave based on her disability. Because this Court finds that Payne's Charge of Discrimination and the resulting OHRE investigation sufficiently put MedStar Harbor Hospital on notice of alleged retaliation, the Defendants' alternative argument that Payne's claim is untimely is without merit. Accordingly, the part of Defendants' Motion to Dismiss (ECF No. 20) that seeks dismissal of Plaintiff's ADA retaliation claim (Count X) on this basis is DENIED.

### III.   Counts IX, X, XI, XII, XIII, XIV as to All Defendants Except MedStar Harbor Hospital

The Defendants argue that Plaintiff's various state and federal retaliation claims (Counts IX, X, XI, XII, and XIII) and loss wages claim (Count XIV) must be dismissed as to all Defendants except Defendant MedStar Harbor Hospital because only Plaintiff's employer may be liable, and none of the named-Defendants, except Defendant Harbor Hospital, were Plaintiff's employer. (ECF No. 20-1 at 11.) To determine whether an entity is an employer for retaliation claims,[3] the Fourth Circuit employs a "hybrid test" which considers a set of factors to determine whether an individual is jointly employed by two or more entities:

(1) authority to hire and fire the individual;
(2) day-to-day supervision of the individual, including employee discipline;

---

[3] Plaintiff's retaliation claims under the varying laws each require an adverse action taken by an employer; each law determines whether an entity is an employer under the same framework applied in Title VII cases and as explained in *Butler*. *See Smith v. CSRA*, 12 F.4th 396, 413 (4th Cir. 2021) (ADA); *Greene v. Harris Corp.*, 653 F. App'x 160, 163 (4th Cir. 2016) (Howard County Code); *Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 717 (4th Cir. 2013) (FMLA); *Wonasue v. Univ. of Maryland Alumni Ass'n*, 984 F. Supp. 2d 480, 491 (D. Md. 2013) (Rehabilitation Act).

> (3) whether the putative employer furnishes the equipment used and the place of work;
> (4) possession of and responsibility over the individual's employment records, including payroll, insurance, and taxes;
> (5) the length of time during which the individual has worked for the putative employer;
> (6) whether the putative employer provides the individual with formal or informal training;
> (7) whether the individual's duties are akin to a regular employee's duties;
> (8) whether the individual is assigned solely to the putative employer; and
> (9) whether the individual and putative employer intended to enter into an employment relationship.

*Butler v. Drive Auto. Indus. of Am., Inc.*, 793 F.3d 404, 414 (4th Cir. 2015). The first three factors are the most important, though no one factor is dispositive or determinative. *Id.* Courts may also "modify the factors to the specific industry context." *Id.*

It is undisputed that Plaintiff was employed at MedStar Harbor Hospital during the alleged facts that gave rise to this action. However, there is also an indication that MedStar Health, Inc. was Plaintiff's employer too. This Court has explained that "MedStar Health is a non-profit health group that oversees a network of hospitals in the Maryland and Washington, DC region." *Jackson v. MedStar Health*, No. CIV.A. RDB-12-00077, 2012 WL 2923173, at *1 (D. Md. July 17, 2012). Plaintiff's Opposition argues that she was employed by Defendant MedStar Harbor Hospital, but that Defendant MedStar Health, Inc. retained authority to hire or fire employees. (ECF No. 25-1 at 3.) Plaintiff's termination letter is written on MedStar Harbor Hospital letter head and informs her of her "employment status with MedStar Health." (ECF No. 22.) The letter then refers to the company generally as "MedStar" when it explains the history of Plaintiff's ADA accommodations. *Id.* Later, the letter again references "MedStar Health" in explaining the effects of Payne's termination on her medical and dental benefit coverage. *Id.*

In reviewing the *Butler* factors in conjunction with the allegations contained in Plaintiff's Complaint, her termination letter expressly referenced therein, and Plaintiff's Opposition, MedStar Health, Inc. and MedStar Harbor Hospital effectively shared the responsibilities as Plaintiff's employer, particularly in the termination and employment benefits processes. It appears that although MedStar Harbor Hospital oversaw Payne's day-to-day supervision, MedStar Health set the policies and accommodations for individuals with special needs, as well as the policy for discretionary medical leave of absence, as identified in Plaintiff's Exhibits. (ECF Nos. 25-3; 25-6.) Furthermore, there was constant communication concerning Payne's employment and accommodations between human resources employees with positions at both MedStar Harbor Hospital and MedStar Health, Inc. (ECF No. 25-4.) In the light most favorable to Payne, Defendant MedStar Harbor Hospital and Defendant MedStar Health, Inc. acted as joint employers sufficient for liability for alleged retaliation claims at the pleading stage.

There is no indication or plausible allegation that, aside from Defendant MedStar Harbor Hospital or Defendant MedStar Health, Inc., any of the remaining named-Defendants were Payne's employer at any time during her tenure as a Registered Nurse. Instead, Plaintiff argues that "the remaining Defendants are named in this legal action primarily because Plaintiff either worked at these facilities and/or could have and would have worked at these facilities had she been reassigned to one of them before termination." *Id.* at 4. By Plaintiff's own admission, MedStar Harbor Hospital officially fired her, and MedStar Health, Inc. otherwise had effective control over her employment; the other named-Defendants cannot be held liable

for her state and federal retaliation claims because they were not her employers. None of the remaining Defendants satisfy any of the *Butler* factors.[4]

For the same reasons discussed above, the named-Defendants except Defendant MedStar Harbor Hospital and Defendant MedStar Health, Inc. cannot be held liable for Plaintiff's Maryland Wage Payment and Collection Law (Count XIV) claim either. Under Md. Code Ann., Lab. & Empl. § 3-505, an "employer shall pay an employee or the authorized representative of an employee all wages due for work that the employee performed before the termination of employment." An employer is defined as "any person who employs an individual in the State." § 3-501(b). Maryland courts use an "economic realities test" to determine whether an entity is an employer. *Newell v. Runnels*, 407 Md. 578, 967 (2009). That test considers "whether the employer (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." *Roley v. Nat'l Pro. Exch., Inc.*, 474 F. Supp. 3d 708, 722 (D. Md. 2020), *aff'd*, 860 F. App'x 264 (4th Cir. 2021). As previously discussed, there is no indication that, aside from Defendant Harbor Hospital and Defendant MedStar Health, Inc., any of the other named-Defendants had supervised or controlled Payne's work schedule or conditions of employment, determined her rate of payment, or maintained her employment records. Therefore, they cannot be held liable for Plaintiff's unpaid wages claim (Count XIV) because they were not her employer.

---

[4] Plaintiff's Complaint does allege that she worked a temporary post "on a PRN basis" at MedStar Montgomery Medical Center and MedStar Surgery Center at Lafayette Centre, but she does not provide details as to when she held this position or if it is related to alleged discriminatory or retaliatory acts at issue. Therefore, there is no plausible allegation that either of those MedStar facilities were her employer at the operative timeframe.

Therefore, the part of Defendants' Motion to Dismiss (ECF No. 20) that seeks dismissal of Plaintiff's state and federal retaliation claims (Counts IX, X, XI, XII, and XIII) and loss wages claim (Count XIV) against all Defendants except Defendant MedStar Harbor Hospital shall be GRANTED IN PART, and Counts IX, X, XI, XII, XIII, and XIV are DISMISSED as to Defendants HH Medstar Health, Inc, MedStar Medical Group, LLC, Montgomery General Hospital, Inc., The Union Memorial Hospital, The Good Samaritan Hospital of Maryland, Inc., Franklin Square Hospital Center, Inc., MedStar Ambulatory Services, Inc., MedStar Surgery Center at Lafayette Centre, LLC, Bay Life Services Corporation, MedStar Physician Partners, Inc. These claims still remain against Defendant MedStar Health Inc. and Defendant MedStar Harbor Hospital, Inc.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss (ECF No. 20) is GRANTED IN PART and DENIED IN PART. The following claims from Plaintiff's Complaint remain as to all Defendants: Count I, Count II, Count III, Count IV, Count V, Count VI, Count VII, and Count VIII. The following claims from Plaintiff's Complaint remain as to Defendant MedStar Health Inc. and Defendant MedStar Harbor Hospital, Inc. ONLY: Count IX, Count X, Count XI, Count XII, Count XIII, Count XIV. A separate Order follows.


Dated: December 12, 2022                     _____/s/_____
                                             Richard D. Bennett
                                             United States District Judge